## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:17-cv-308-KMT

ERYN R. MEGNA,
ROBERT V. MEGNA, and
BACKSTREET BISTRO, LLC

      Plaintiffs,

v.

LITTLE SWITZERLAND OF AMERICA CANDY FACTORY, INC.,
KRISTINE M. ULLEMEYER, and
HAYES ULLEMEYER

      Defendants.

---

## FIRST AMENDED COMPLAINT & JURY DEMAND

---

Plaintiffs Eryn R. Megna, Robert V. Megna, and Backstreet Bistro, LLC, by and through their attorney, Julian G.G Wolfson of THE LAW OFFICE OF JULIAN G.G. WOLFSON, LLC, respectfully alleges for their Complaint and Jury Demand as follows:

### I. INTRODUCTION

1. This case primarily concerns Defendants' deliberate efforts to violate Plaintiffs' right under 42 U.S.C. § 1982, to be free from racial discrimination in the holding and use of property.

2. Plaintiff Eryn R. Megna, a Caucasian woman, is married to Plaintiff Robert V. Megna, an African-American man. Together, Mrs. and Mr. Megna own and/or operate Plaintiff Backstreet Bistro, LLC ("Backstreet Bistro"), a small restaurant in Ouray, Colorado.

3. The property that Backstreet Bistro owns and operates out of, is located in the same two building condominium complex as property owned by Defendant Little Switzerland

of America Candy Factory, Inc. ("Little Switzerland")—a shell corporation

managed and/or owned by Defendants Hayes Ullemeyer, a Caucasian man, and his

wife, Kristine M. Ullemeyer, a Caucasian woman.

4.    In June of 2015, shortly after purchasing the property, Plaintiffs had a heating exhaust

system ("blower") installed on one of the property's exterior walls, which is required by

law for all restaurants that use an open flame.

5.    Days later, Defendants forcefully demanded that Plaintiffs move the blower because they

thought it was "ugly," offering no other explanation to justify their demand.

6.    Plaintiffs, unwilling to comply with this unreasonable demand, informed Defendants that

they were not willing to move the blower.

7.    In retaliation, Defendants have engaged in a coordinated campaign to harass, intimidate,

and otherwise coerce Plaintiffs into complying with their demands.

8.    This harassment and intimidation is best illustrated by Defendants' decision to file and

litigate a frivolous lawsuit against Plaintiffs, whereby Defendants have alleged that

Plaintiffs' blower was installed without the consent of the homeowners' association,

purportedly in violation of the condominium complex's restrictive covenants, and that its

operation is causing a nuisance.

9.    Defendants asserted these allegations despite having knowledge that the homeowners'

association was no longer in existence, thereby making the relevant restrictive covenants

unenforceable, and despite not having any cognizable injury to support their claim of

nuisance.

10.   More importantly, this is the first time Defendants have ever sought to enforce these

particular restrictive covenants or bring claims of nuisance, even though Defendants

themselves, and other property owners/tenants of the Complex, have engaged in similar conduct.

11.   The only difference between Plaintiffs and other property owners/tenants that have engaged in similar conduct, is that Plaintiffs are African-American and/or are associated with someone who is African-American.

12.   When also considering the pretextual justifications Defendants have put forth in attempt to rationalize their unlawful conduct and Mr. Ullemeyer's decision to address Mr. Megna by using a highly offensive racial slur, it becomes apparent that Defendants' acts and/or omissions have been motivated by Plaintiffs' race and/or the race of persons with whom Plaintiffs associate.

13.   Because of Defendants' coordinated conduct, Plaintiffs have been discriminatorily prevented from using their property on an equal basis with other current and former owners/tenants of the Complex.

14.   As a result, Plaintiffs have suffered significant economic and emotional damages.

15.   Based on these facts, Defendants have violated Plaintiffs' rights under 42 U.S.C. § 1982 and 42 U.S.C. § 1985(3) for which they now seek redress, among other state law claims.

## II. JURISDICTION AND VENUE

16.   This action arises under the laws of the United States and is brought pursuant 42 U.S.C. §§ 1982 and 1985(3).

17.   This action also arises under the laws of the State of Colorado and Colorado common law.

18.   Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, as Plaintiffs' federal law claims and state law claims arise out of a common nucleus

of operative facts.

19.    Jurisdiction supporting Plaintiffs' claim for attorney's fees and costs is conferred by 42 U.S.C. § 1988 and C.R.S. § 38-33.3-123.

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the events giving rise to the claims asserted in this Complaint occurred within the State of Colorado.

### III. PARTIES

**PLAINTIFFS:**

21.    Plaintiff Eryn R. Megna, a Caucasian female, is a citizen of the United States and is a resident of and domiciled in the State of Colorado. At all relevant times, Mrs. Megna has been the sole and exclusive owner of Backstreet Bistro, LLC.

22.    Plaintiff Robert V. Megna, an African-American male, is a citizen of the United States and is a resident of and domiciled in the State of Colorado. Mr. Megna is an employee of Backstreet Bistro, LLC and at all relevant times has worked with his wife, Mrs. Megna, to run, operate, and manage Backstreet Bistro. Mr. Megna is responsible for the day to day operation and management of Backstreet Bistro, including but not limited to hiring, supervising and firing of employees, and determining the restaurant's hours of operation. Upon information and belief, at all times relevant to this Complaint, Defendants have known that Mr. Megna and Mrs. Megna are married.

23.    Backstreet Bistro, LLC ("Backstreet Bistro"), a small restaurant serving breakfast and lunch, is a Colorado Limited Liability Corporation formed by Mrs. Megna in 2010. At all relevant times, Backstreet Bistro has owned the property located at 219 7th Street, Ouray, CO, 81427—one of only two separate properties included within the B&B Condominium Complex.

**DEFENDANTS:**

24. Defendant Little Switzerland of America Candy Factory, Inc. ("Little Switzerland") is a Colorado Corporation, formed on October 14, 1997. At all relevant times, Little Switzerland has owned the property located at 225 7th Street, Ouray, CO 81427—one of only two different properties included within the B&B Condominium Complex. Upon information and belief, Little Switzerland is an alter ago of its owners and/or directors, Hayes Ullemeyer and Kristine M. Ullemeyer, who have used the corporation as a shell for their own personal purposes. This is evidenced by the fact that Little Switzerland has failed to maintain adequate corporate records, hold required meetings, and properly authorize corporate actions.

25. Defendant Hayes Ullemeyer, a Caucasian male, is a citizen of the United States and is a resident of and domiciled in the State of Colorado. At all relevant times, Mr. Ullemeyer served as the Secretary-Treasurer and part-owner of Little Switzerland, and was acting in his capacity as Secretary-Treasurer, owner, and/or in his individual capacity.

26. Defendant Kristine M. Ullemeyer, a Caucasian female, is a citizen of the United States and is a resident of and domiciled in the State of Colorado. At all relevant times, Mrs. Ullemeyer served as the Sole Shareholder, Director, and part-owner of Little Switzerland, and was acting in her capacity as the Sole Shareholder, Director, owner, and/or in her individual capacity.

## IV. FACTUAL ALLEGATIONS

### *The Restrictive Covenants That Defendants Are Attempting To Enforce Are Void*

27. Since December 5, 1997, Defendants have owned one of the properties included within the B&B Condominium Complex ("Complex")—a condominium complex located in Ouray, Colorado that consists of only two adjacent properties, which are separated by

approximately ten feet.[1]

28.   As part of their contract to purchase property within the Complex, Defendants, like all

other property owners/tenants within the Complex, agreed to abide by the Declaration of

Grants, Covenants, Restrictions and Conditions ("restrictive covenants").

29.   The restrictive covenants, which imposed various rules for property owners/tenants

within the Complex, were initially established by the B&B Condominium Complex

Owners Association ("Association")—a homeowners' association formed by the original

developers of the Complex in 1997.

30.   The rules imposed by the restrictive covenants required all property owners/tenants

within the Complex to obtain approval from the Association before making any additions

or alterations to the exterior of their property.

31.   Although formed by the initial developers of the Complex, the Association has never

actually functioned.

32.   Upon information and belief, the Association has never held any meetings, engaged in

any activities, elected any officials, filed any tax returns, maintained any corporate

records, approved any modification to the exterior of either building in the Complex, or

taken any other actions.

33.   On March 1, 2000, however, the Association was dissolved by the Colorado Secretary of

State and has never been reestablished.

34.   Since March 1, 2000, there has been no Association related to the Complex, and therefore

no entity to grant approval for property owners/tenants seeking to make alterations or

---

[1] Mr. and Mrs. Ullemeyer purchased this property in their capacity as owners/agents of Little
Switzerland.

additions to the exterior of their property.

35.     As a result, it became impossible to comply with this aspect of the restrictive covenants.

***Since Defendants Purchased Property Within The Complex, Numerous Exterior Alterations And Additions Have Been Made Without Obtaining Approval From The Association***

36.     Since March 1, 2001, Defendants, as well as several other property owners/tenants within the Complex, have made various additions and alterations to the exterior of their property without obtaining approval from the Association.

37.     These additions and alterations include, but are not limited to: the installation of two fences, a porch, a swamp cooler, and multiple heat exhaust systems ("blowers").

38.     The installation of some of these additions and alterations by Defendants have directly injured Plaintiffs, and will continue to do so into the foreseeable future.

39.     For example, one of the aforementioned fences was intentionally installed by Defendants so as to permanently prevent Plaintiffs from accessing approximately one-third of the common area—an area which they have a right to possess and use.

40.     Additionally, Defendants swamp cooler has created, and continues to create, an audible noise and vibration, which unduly interferes with Plaintiffs' use and enjoyment of their property and the common area.

41.     At no time did Defendants, or any other property owners/tenants within the Complex, raise any concerns about these alterations and additions.

42.     Noticeably, none of the persons and/or entities that made these additions and alterations were African-American or were associated with someone who is African-American.

***In April of 2015, Mrs. Megna Purchased Property Within The Complex To Operate Backstreet Bistro***

7

43.    On or around April 30, 2015, Eryn R. Megna entered into a contract[2] to purchase one of the two buildings within the Complex, which Mrs. Megna acquired so that she and her husband Robert V. Megna could relocate their business, Backstreet Bistro[3]—a small restaurant serving breakfast and lunch.[4]

44.    During the process of obtaining all of the permits needed to open Backstreet Bistro, the building inspector for the town of Ouray informed Mrs. and Mr. Megna that there was only one place where their blower could legally be installed—a piece of equipment required by local ordinances for all restaurants, like Backstreet Bistro, that use an open flame.

45.    In light of the fact that the blower could only be legally installed in one place, and that the blower would need to be installed for Backstreet Bistro to operate in accordance with the law, Plaintiffs had the blower legally installed on the exterior of their property on or around June 1, 2015.

46.    In compliance with all permitting requirements, Backstreet Bistro opened on June 20, 2015.

***Defendants Discriminatorily Harassed and Intimidated Plaintiffs Because of Mr. Megna's Race, Mrs. Megna's Association with Mr. Megna, and Backstreet Bistro's Decision to Employ Mr. Megna***

47.    On or around June 25, 2015, Mr. Megna saw Kristine M. Ullemeyer walking around the Complex and politely introduced himself as her neighbor.

---

[2] Mrs. Megna purchased the property in her capacity as owner of Backstreet Bistro, LLC.

[3] Backstreet Bistro had previously operated in two different locations within Ouray, Colorado.

[4] While Mr. Megna is not technically an owner of Backstreet Bistro, he is in charge of managing the restaurant and its employees on a day to day basis, and therefore plays a vital role in its operation and management.

48.  Upon introducing himself, Mrs. Ullemeyer immediately responded by telling Mr. Megna, in a markedly hostile and aggressive tone, to get his "fucking chairs" off of her "fucking building."

49.  Seconds later, after Mr. Megna promptly complied with Mrs. Ullemeyer's request, Mrs. Megna came over to introduce herself.

50.  At this point, Mrs. Ullemeyer antagonistically informed Mrs. and Mr. Megna that they would have to move their blower because it was "ugly," offering no other explanation to justify her unreasonable and arbitrary demand.

51.  In fact, this was first time that Mrs. Ullemeyer had ever objected to any exterior addition or alteration within the Complex, notwithstanding the fact that numerous other individuals and entities had made similar additions and/or alterations, including but not limited to the installation of a blower on another restaurant.

52.  On or around June 16, 2015, Hayes Ullemeyer called Mr. Megna. During their phone call, Mr. Ullemeyer condescendingly referred to Mr. Megna as a "boy," a derogatory term used to refer to African-American men, and otherwise harassed and intimidated Mr. Megna by threatening to bring legal action if the blower was not moved.

53.  In response, Mr. Megna respectfully informed Mr. Ullemeyer that neither he nor Mrs. Megna were willing to move the blower.

54.  At no time during their phone call did Mr. Ullemeyer inform Mr. Megna that the blower was installed in violation of the restrictive covenants or that it was causing a nuisance.

55.  Like Mrs. Ullemeyer, this was the first time that Mr. Ullemeyer had ever objected to any exterior addition or alteration.

56.  Importantly, this was also the first time that any exterior addition or alteration, including

but not limited to the installation of a blower, had been made by someone who is African-American or is associated with someone who is African-American.

57.   Just days after Mr. Ullemeyer's call, in furtherance of Defendants' campaign of harassment and intimidation, Mrs. Ullemeyer sent one of her friends into Backstreet Bistro to demand, yet again, that Plaintiffs move the blower.

58.   Mr. Megna respectfully refused to speak with Mrs. Ullemeyer's friend about the blower, and politely informed her that she would need to speak with his attorney, Paul Sunderland.

59.   Upon information and belief, Mrs. Ullemeyer waited outside of the restaurant while she watched her friend harass and intimidate Mr. Megna.

**For Several Months, Mr. Sunderland Attempted, In Good Faith, To Work With The Ullemeyers' Attorney To Resolve The Dispute Concerning The Blower**

60.   From July to October of 2015, Mr. Sunderland, in his capacity as Plaintiffs' attorney, worked with Defendants' attorney in attempt to amicably respond to Defendants' demand that Plaintiffs move the blower.

61.   On or around July 1, 2015, Defendants communicated to Mr. Sunderland, for the very first time, that the reason why they wanted the blower moved was because it was violating the restrictive covenants and causing a nuisance.

62.   In support of these claims, Defendants asserted that their one and only tenant had complained about the noise and odor of the blower.

63.   Subsequently, Mr. Sunderland and Mr. Megna encountered Defendants' tenant on the street and asked whether he had ever complained to Defendants about the blower.

64.   Contrary to the information provided by Defendants, the tenant unambiguously stated that he had never complained to Defendants, that the blower did not affect or impair his

rights as a tenant, and that he had no objection to the blower.

65.  Mr. Sunderland conveyed this information to Defendants' attorney, but was informed that Defendants were not willing to change their position.

66.  In order to further harass and intimidate Mr. Megna, Mrs. Megna, and Backstreet Bistro, Mrs. and Mr. Ullemeyer caused a lawsuit to be filed against them on January 4, 2016.

67.  The Complaint, which was filed in the District Court of Ouray County, Colorado, alleged that the blower was installed in violation of the restrictive covenants and that its operation was causing a nuisance.

68.  Upon information and belief, Defendants have never before asserted these claims against any property owners/tenants within the Complex, notwithstanding the fact that other property owners/tenants have made similar, and in some cases identical, exterior alterations and/or additions. The only significant difference between Plaintiffs and these other property owners/tenants is that Plaintiffs are African-American and/or are associated with someone who is African-American.

69.  In their answer to the Complaint, which was filed with the District Court on February 9, 2016, Mr. Megna, Mrs. Megna, and Backstreet Bistro asserted the following counter claims: (1) violation of duty of good faith and fair dealing; (2) conversion; (3) nuisance; (4) violation of covenants; and (5) alter-ego liability.

70.  As the Megnas and their attorneys began to interview potential witnesses and acquire additional information, it became apparent that the only plausible reason for why Mr. and Mrs. Ullemeyer had taken issue with the blower was because of Mr. Megna's race, and Mrs. Megna/Backstreet Bistro's association with Mr. Megna.

71.  On August 8, 2016, only seven months after the Ullemeyers filed their lawsuit, and less

than six months after the Megnas filed their answer and counterclaim, the Megnas

sought leave to amend to add counter claims under 42 U.S.C. §§ 1981, 1982, and 1983.

72.     Despite the plausibility of some of these claims, on September 22, 2016, District Court

Judge Keri A. Yoder denied the motion to amend the complaint in its entirety,

explaining that proposed amendment would "greatly expand the nature of [the state

court] proceedings," "prejudice [the Ullemeyers]," "require additional discovery," "add

great expense to all parties," and "delay trial."

73.     In doing so, Judge Yoder explicitly stated that such claims were not compulsory counter

claims under C.R.C.P. 13(a), but rather were permissive counter claims under C.R.C.P.

13(b).

74.     Currently, all proceedings in the state case, *Little Switzerland of America Candy Factory,*

*Inc. v. Backstreet Bistro, LLC, et al.*, 16CV30001, have been stayed pending the outcome

of this federal action.

### *Mrs. Megna, Mr. Megna, and Backstreet Bistro Have Suffered Significant Economic and Emotional Damages Due to Defendants' Discriminatory Conduct*

75.     As a result of Defendants' discriminatory conduct, Plaintiffs have suffered significant

economic damages.

76.     These economic damages have been caused, for example, by the fact that both Mrs. and

Mr. Megna have had to miss work on numerous occasions in order to deal with the

state lawsuit, thereby forcing Backstreet Bistro to either be short staffed or to pay other

employees overtime wages—both of which have had a significant impact on the financial

well-being of the business.

77.     As a result of Defendants' conduct, Plaintiffs have also been required to expend a

significant amount of their monetary resources to defend against Defendants' frivolous

and racially motivated lawsuit over the last year and a half.

78.  By being forced to incur these costs, Plaintiffs' resources have been diverted away from Backstreet Bistro, thereby preventing Plaintiffs from investing in the restaurant, as they would otherwise have, to increase its profitability.

79.  In fact, Plaintiffs' monetary resources have become so depleted that they have been forced to rely on their credit cards just to keep the restaurant open.

80.  Additionally, both Mrs. and Mr. Megna have suffered significant emotional damages due to Defendants' conduct.

81.  These emotional damages can be seen by the undue stress and anxiety that Defendants' discriminatory actions have caused Plaintiffs, which in turn have interfered with Plaintiffs' ability to operate Backstreet Bistro.

82.  For example, as a result of this undue stress, Mr. Megna has suffered from various medical complications, which have required him to undergo surgery, three ultrasounds, an MRI, a CT scan, X-rays, and have forced him to seek treatment from a chiropractor, physical therapist, an acupuncturist, and a masseuse.

83.  To this day, Mr. Megna remains in constant pain, for which his doctors have prescribed him pain medication.

84.  These medical issues, and the accompanying pain, have significantly interfered with Mr. Megna's ability to work as an employee of Backstreet Bistro. Specifically, they have forced him to miss work, take additional breaks, and have prevented him from engaging in certain work-related tasks.

85.  Moreover, the undue stress placed on Mr. Megna has affected his marital relationship with Mrs. Megna, further interfering with his ability to work as an employee of the

restaurant.

86. Similarly, this undue stress has forced Mrs. Megna to divert her attention away from Backstreet Bistro and has placed a significant strain on her marital relationship with Mr. Megna, all of which has interfered with her ability to operate the restaurant.

87. Together, these injuries have significantly interfered with Plaintiffs' ability to operate Backstreet Bistro, which has necessarily interfered with their ability to use their property.

## V. STATEMENT OF CLIAMS

### FIRST CLAIM FOR RELIEF
*42 U.S.C. § 1982*
*Brought by Plaintiff Eryn R. Megna Against all Defendants*

88. Plaintiff Eryn R. Megna re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

89. 42 U.S.C. § 1982 protects the rights of citizens to, among other things, use real and personal property, free from racial discrimination.

90. At all relevant times, Mrs. Megna has held an interest in the property owned by Backstreet Bistro, LLC by virtue of her ownership of the Company and her status as an employee of the Company.

91. As an individual that is married to/associated with someone who is African-American, Mrs. Megna is a member of a protected class under § 1982.

92. Defendants have interfered with Mrs. Megna's ability to use her property by engaging in a campaign of harassment and intimidation against her.

93. Additionally, Defendants have interfered with Ms. Megna ability to use her property by seeking to prevent her from using it on an equal basis with other owners/tenants, both current and former, of the Complex.

14

94. Defendants' acts and/or omissions have been motivated by the fact that Mrs. Megna is married to Mr. Megna, and therefore is associated with a person who is African-American.

95. The discriminatory nature of Defendants' actions is evidenced by (1) Defendants' disparate treatment of similarly situated persons who hold, or have held, an interest in property within the Complex that are not married to/associated with someone who is African-American, (2) Defendant Hayes Ullemeyer's use of a highly offensive racial slur to address Mr. Megna, and (3) the pretextual nature of Defendants' justifications for bringing legal action against Mrs. Megna, including but not limited to Defendants' wholly fabricated assertion that their tenant had complained about the blower.

96. As a result of Defendants' acts and/or omissions, Mrs. Megna has suffered significant economic and emotional damages.

97. Defendants acted with reckless or callous indifference to Mrs. Megna's right to be free from intentional race discrimination in her ability to hold and use her property, thereby entitling her to punitive damages.

### SECOND CLAIM FOR RELIEF
*42 U.S.C. § 1982*
*Brought by Plaintiff Robert V. Megna Against all Defendants*

98. Plaintiff Robert V. Megna re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

99. 42 U.S.C. § 1982 protects the rights of citizens to, among other things, hold real and personal property, free from racial discrimination, even where an individual seeking protection from the law is not a property owner.

100. As an employee and manager of Backstreet Bistro, LLC, Mr. Megna holds an interest in

Backstreet Bistro's property for purposes of § 1982.

101. As an African-American, Mr. Megna is a member of a protected class under § 1982.

102. Defendants have interfered with Mr. Megna's ability to use the property by engaging in a campaign of harassment and intimidation against him.

103. Additionally, Defendants have interfered with Mr. Megna ability to use the property by seeking to prevent him from using it on an equal basis with other owners/tenants, both current and former, of the Complex.

104. Defendants' acts and/or omissions have been motivated by the fact that Mr. Megna is African-American.

105. Defendants' intent to discriminate against Mr. Megna because of his race is evidenced by (1) Defendants' disparate treatment of similarly situated individuals that hold, or have held, an interest in property within the Complex who are not African-American, (2) Defendant Hayes Ullemeyer's use of a highly offensive racial slur to address Mr. Megna, and (3) the pretextual nature of Defendants' justifications for bringing legal action against Mr. Megna, including but not limited to Defendants' wholly fabricated assertion that their tenant had complained about the blower.

106. Defendants acted with reckless or callous indifference to Mr. Megna's right to be free from intentional race discrimination in his ability to hold and use Backstreet Bistro's property, thereby entitling him to punitive damages.

### THIRD CLAIM FOR RELIEF
*42 U.S.C. § 1982*
*Brought by Plaintiff Backstreet Bistro, LLC Against all Defendants*

107. Plaintiff Backstreet Bistro, LLC re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

16

108.  42 U.S.C. § 1982 protects the rights of citizens to, among other things, use real and personal property, free from racial discrimination.

109.  Moreover, the law provides a company or other business entity standing to assert claims under § 1982, where such discrimination is based on the race of one of its employees and where such discrimination adversely affects the business.

110.  Mr. Megna, an African-American man, is an employee of Backstreet Bistro.

111.  Defendants have interfered with Backstreet Bistro's ability to use its property by seeking to prevent it from using such property on an equal basis with other owners/tenants, both current and former, of the Complex.

112.  Defendants' acts and/or omissions have been motivated by the fact that Backstreet Bistro employs someone who is African-American, Mr. Megna.

113.  The discriminatory nature of Defendants' actions are evidenced by (1) Defendants' disparate treatment of similarly situated entities which hold, or have held, an interest in property within the Complex that do not employ or otherwise associate with African-Americans, and (2) Defendant Hayes Ullemeyer's use of a highly offensive racial slur to address Mr. Megna, and (3) the pretextual nature of Defendants' justifications for bringing legal action against Backstreet Bistro, including but not limited to Defendants' wholly fabricated assertion that their tenant had complained about the blower.

114.  As a result of Defendants' acts and/or omissions, Backstreet Bistro has suffered significant damages.

115.  Defendants acted with reckless or callous indifference to Backstreet Bistro's right to be free from intentional race discrimination in its ability to hold its property, thereby

entitling it to punitive damages.

### FOURTH CLAIM FOR RELIEF
*42 U.S.C. § 1985(3)*
*Brought by Plaintiff Eryn R. Megna Against All Defendants*

116.    Plaintiff Eryn R. Megna re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

117.    42 U.S.C. § 1985(3) prohibits two or more persons from conspiring together to deprive any person of their rights guaranteed by 42 U.S.C. § 1982, where such conspiracy is motivated by racial animus.

118.    Upon information and belief, Defendants have conspired together in order to deprive Mrs. Megna of her rights under § 1982, and have each taken overt acts in furtherance of this conspiracy.

119.    Defendants conspiracy to interfere with Mrs. Megna's rights has been motivated by the fact that Mrs. Megna is married to/associated with someone who is African-American, Mr. Megna.

120.    The sequence of events detailed in this Complaint and the joint participation of Defendants in such events, demonstrates that Defendants had a meeting of the minds and acted in concert to deprive Mrs. Megna of her rights under § 1982.

121.    As a result of Defendants' conspiracy, Mrs. Megna has suffered significant economic and emotional damages.

122.    Defendants' actions were taken with reckless or callous indifference to Mrs. Megna's rights under §1985(3), thereby entitling her to punitive damages.

### FIFTH CLAIM FOR RELIEF
*42 U.S.C. § 1985(3)*
*Brought by Plaintiff Robert V. Megna Against all Defendants*

123. Plaintiff Robert V. Megna re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

124. 42 U.S.C. § 1985(3) prohibits two or more persons from conspiring together to deprive any person of their rights guaranteed by 42 U.S.C. § 1982, where such conspiracy is motivated by racial animus.

125. Upon information and belief, Defendants have conspired together in order to deprive Mr. Megna of his rights under § 1982, and have each taken overt acts in furtherance of that conspiracy.

126. Defendants' conspiracy to interfere with Mr. Megna rights has been motivated by the fact that Mr. Megna is African-American.

127. The sequence of events detailed in this Complaint and the joint participation of Defendants in such events, demonstrates that that Defendants had a meeting of the minds and acted in concert to deprive Mr. Megna of his rights under § 1982.

128. As a result of Defendants' conspiracy, Mr. Megna has suffered significant economic and emotional damages.

129. Defendants' actions were taken with reckless or callous indifference to Mr. Megna's rights under §1985(3), thereby entitling him to punitive damages.

**SIXTH CLAIM FOR RELIEF**
*42 U.S.C. § 1985(3)*
*Brought by Plaintiff Backstreet Bistro, LLC Against all Defendants*

130. Plaintiff Backstreet Bistro, LLC re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

131. 42 U.S.C. § 1985(3) prohibits two or more persons from conspiring together to deprive any person of their rights guaranteed by 42 U.S.C. § 1982, where such conspiracy is

motivated by racial animus.

132. Moreover, the law provides a company and/or other business entity standing to assert claims under §1985(3), where the conspiracy is motivated by the race of one of its employees and where such discrimination adversely affects the business.

133. Upon information and belief, Defendants have conspired together in order to deprive Backstreet Bistro of its rights under § 1982, and have each taken overt acts in furtherance of that conspiracy.

134. Defendants' conspiracy to interfere with Backstreet Bistro's rights has been motivated by the fact that Mr. Megna is an employee of Backstreet Bistro and that Mr. Megna is African-American.

135. The sequence of events detailed in this Complaint and the joint participation of Defendants in such events, demonstrates that that Defendants had a meeting of the minds and acted in concert to deprive Backstreet Bistro of its rights under § 1982.

136. As a result of Defendants' conspiracy, Backstreet Bistro has suffered significant economic damages.

137. Defendants' actions were taken with reckless or callous indifference to Backstreet Bistro's rights under § 1985(3), thereby entitling it to punitive damages.

## SEVENTH CLAIM FOR RELIEF
*C.R.S. § 38.33.3-113*
*Brought by all Plaintiffs Against all Defendants*

138. Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs as if fully set forth herein.

139. C.R.S. § 38.33.3-113 imposes on "every contract or duty governed by [the Colorado Common Interest Ownership Act ("CCIOA")] an obligation of good faith in its

performance or enforcement."

140. The provisions of the CCIOA are applicable to the B&B Condominium Complex, its

covenants, and any actions taken with regard to the enforcement of those covenants.

141. Accordingly, Defendants had an obligation not to arbitrarily or discriminatorily enforce

the B&B Condominium Complex's restrictive covenants, or to seek to enforce the

covenants for any other improper purpose.

142. Defendants acted in bad faith and thereby violated this statutorily imposed duty when it

decided to arbitrarily and discriminatorily enforce the B&B Condominium's restrictive

covenants against Plaintiffs.

143. The arbitrary and discriminatory nature of Defendants decision to enforce the B&B

Condominium's restrictive covenants is evidenced by (1) their failure to enforce such

covenants against similarly situated individuals and/or entities who have engaged in

nearly identical conduct in the past and by (2) their decision to only enforce such

covenants against individuals and/or entities who are African-American or are associated

with someone who is African-American.

144. Defendants decision to arbitrarily and discriminatorily enforce the B&B Condominium's

restrictive covenants was done intentionally and with the intent to harm Plaintiffs' and

their property.

145. As a result of Defendants' willful violation of C.R.S. § 38.33.3-113, Plaintiffs have

suffered economic and emotional damages.

### EIGHTH CLAIM FOR RELIEF
*Common Law Conversion*
Brought by All Plaintiffs Against All Defendants

146. Plaintiffs re-allege and incorporate by reference the allegations contained in the previous

paragraphs as if fully set forth herein.

147. Defendants have engaged in the unauthorized act of installing a fence around a significant portion of the B&B Condominium Complex's designated common area.

148. As a result of this unauthorized act of dominion, Plaintiffs have been, and continue to be, permanently deprived of their legal right to access and utilize such property.

149. Upon information and belief, Defendants intentionally engaged in this unauthorized act of dominion in order to deprive Plaintiffs of access to such property.

**NINTH CLAIM FOR RELIEF**
*Common Law Private Nuisance*
*Brought by all Plaintiffs Against all Defendants*

150. Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs as if fully set forth herein.

151. Plaintiffs maintain a possessory interest in the property located at 219 7th Street, Ouray, CO, 81427, as well as in the common areas associated with the B&B Condominium Complex.

152. Defendants decision to install and operate a swamp cooler on the exterior of their property, which emits a loud noise audible to Plaintiffs, and to erect a fence preventing Plaintiffs from accessing the common area of the B&B Condominium Complex, was done intentionally or negligently.

153. As a result of this intentional or negligent conduct, Defendants have created an unreasonable and substantial interference with Plaintiffs' use and enjoyment of their property, which a normal person in the community would find offensive, annoying, or inconvenient if they were placed in the same or similar circumstances.

154. Defendants' decision to install and operate their swamp cooler has created a noise and

vibration that unduly disturbs Plaintiffs and has thereby unreasonably interfered with the use and enjoyment of their property.

155.   Defendants' decision to erect a fence around the common area of the B&B Condominium Complex has unreasonably interfered with Plaintiffs' use and enjoyment of their property, as Defendants' fence has largely prevented Plaintiffs from accessing this area, which they are legally entitled to possess and use.

156.   The harm caused by Defendants conduct significantly outweighs its utility.

## TENTH CLAIM FOR RELIEF
*Breach of Covenants*
*Brought by All Plaintiffs Against All Defendants*

157.   Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs as if fully set forth herein.

158.   To the extent this Court finds that the restrictive covenants are enforceable, Defendants had an obligation to obtain permission from the Association before making any exterior additions or alterations to their property.

159.   Defendants made numerous additions or alterations to the exterior of their property, without seeking or obtaining approval from the Association, which they continue to maintain, operate and use.

160.   For example, Defendants installed a swamp cooler and multiple heating exhaust systems on the exterior of their property without seeking or obtaining approval from the Association, in violation of the restrictive covenants.

161.   As a result of Defendants' failure to abide by the restrictive covenants, Plaintiffs' have suffered damages.

WHEREFORE, Plaintiffs prays this Court:

A.  Enter judgment in favor of Plaintiffs and against Defendants;

B.  Award Plaintiffs compensatory damages against Defendants for their

violations of Plaintiffs' federally protected rights;

C.  Award Plaintiffs compensatory damages against Defendants for their

violations of Colorado state law;

D.  Issue an injunction prohibiting Defendants from continuing to engage in the

unlawful conduct alleged in this Complaint;

E.  Award Plaintiffs punitive damages against Defendants for their reckless and/or

callous indifference to Plaintiffs' federally protected rights and for the deliberate

violation of the duty imposed on Defendants by C.R.S. § 38.33-113;

F.  Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988,

C.R.S. § 38-33-123, and any other applicable provisions of law; and

G.  Allow such other and further relief as the Court deems just and proper.

**PLANTIFFS REQUEST A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated this 22nd day of May, 2017.


LAW OFFICE OF JULIAN G.G WOLFSON, LLC

*/s/ Julian G.G. Wolfson*
Julian G.G. Wolfson
PO Box 13013
Denver, CO 80201
(720) 507-5133
jwolfsonlaw@gmail.com


ATTORNEY FOR PLAINTIFFS