**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Case No. 17-cv-00308-RM-KMT

ERYN R. MEGNA,
ROBERT V. MEGNA,
BACKSTREET BISTRO, LLC,

    Plaintiffs,

v.

LITTLE SWITZERLAND OF AMERICA CANDY FACTORY, INC.,
KRISTINE M. ULLEMEYER,
HAYES ULLEMEYER,

    Defendants.

---

## OPINION AND ORDER
---

On May 22, 2017, plaintiffs Eryn R. Megna ("Mrs. Megna"), Robert V. Megna ("Mr. Megna"), and Backstreet Bistro, LLC ("the Bistro") (collectively, "plaintiffs") filed a First Amended Complaint ("the FAC") against Little Switzerland of America Candy Factory, Inc., Kristine M. Ullemeyer ("Mrs. Ullemeyer"), and Hayes Ullemeyer ("Mr. Ullemeyer") (collectively, "defendants"). (ECF No. 25). Therein, each individual plaintiff raised claims against defendants pursuant to 42 U.S.C. § 1982 ("§ 1982") and 42 U.S.C. § 1985(3) ("§ 1985(3)"), as well as numerous claims under State law. (*Id.*)

On June 6, 2017, defendants filed a motion to dismiss all claims asserted against them in the FAC ("the motion to dismiss"), pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) ("Rule 12(b)(6)"). (ECF No. 26.) Plaintiff subsequently filed a response (ECF No. 28), and defendants filed a reply

(ECF No. 29). The Court referred the motion to dismiss to U.S. Magistrate Judge Kathleen M. Tafoya. (ECF No. 27.)

Pending before the Court is the Report and Recommendation ("R&R") of the Magistrate Judge, recommending denying the motion to dismiss. (ECF No. 31.) The R&R advised the parties that they had 14 days to file specific written objections to the R&R in order to preserve de novo review. (*Id*. at 14-15.) Fourteen days later, defendants filed objections to the R&R. (ECF No. 33.) Plaintiffs did not file any objections to the R&R, but, did file a response to defendants' objections (ECF No. 41).

## I.     Review of a Report and Recommendation

A district court may refer pending motions to a magistrate judge for entry of a report and recommendation. 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b). The court is free to accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(3). A party is entitled to a *de novo* review of those portions of the report and recommendation to which specific objection is made. *See* Fed.R.Civ.P. 72(b)(2), (3). "[O]bjections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30 St.*, 73 F.3d 1057, 1060 (10th Cir. 1996); *see also See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate."). Furthermore, arguments not raised before the magistrate judge need not be considered by this Court. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

## II. The Magistrate Judge's Recommendations and Defendants' Objections

The Magistrate Judge, first, recommended disposing of the motion to dismiss solely under Rule 12(b)(6) because defendants' jurisdictional questions were intertwined with the merits of the case. (ECF No. 31 at 4-5.) The Magistrate Judge further recommended declining to consider various documents defendants had attached to a prior version of the motion to dismiss. (*Id*. at 5-7.) Defendants do not raise any objections to these recommendations. (*See* ECF No. 33 at 1-2.) As a result, the Court ADOPTS the R&R to the extent it recommends disposing of the motion to dismiss under Rule 12(b)(6) only and declining to consider the documents attached to a prior version of the motion to dismiss.

The Magistrate Judge, next, recommended rejecting defendants' argument that claim and issue preclusion barred plaintiffs' claims. (ECF No. 31 at 7-8.) The Magistrate Judge found an analogous case persuasive, and that defendants failed to sufficiently develop this argument and failed to address plaintiffs' arguments in opposition thereto. (*Id*.) Defendants do not object to this recommendation either. (ECF No. 33 at 1-2.) As a result, the Court ADOPTS the R&R to the extent it recommends rejecting claim and issue preclusion as bases for dismissing plaintiffs' claims.

The Magistrate Judge, next, recommended denying the motion to dismiss with respect to plaintiffs' § 1982 claims. (ECF No. 31 at 9-13.) The Magistrate Judge found that the FAC alleged the first element of a § 1982 claim in alleging facts suggesting defendants has a discriminatory intent in applying restrictive covenants against only African-Americans. (*Id*. at 9-10) The Magistrate Judge found that the FAC alleged the second element of a § 1982 claim in alleging that defendants' enforcement of restrictive covenants interfered with plaintiffs' use of their property. (*Id*. at 10-13.) The Magistrate Judge found that interfering with plaintiff's use of their property was a sufficient

3

legal basis to pursue a § 1982 claim, and the FAC's allegations were sufficient to show that defendants had interfered with plaintiffs' use of their property. (*Id*.) The moving defendants object to the Magistrate Judge's recommendation that plaintiffs have set forth a legally sufficient § 1982 claim, and, even if it was legally sufficient, that they have sufficiently alleged that defendants denied plaintiffs use of their property. (*See* ECF No. 33 at 1-2.)

The Magistrate Judge, next, recommended that the motion to dismiss should be denied with respect to plaintiffs' § 1985(3) claim. (ECF No. 31 at 13.) The Magistrate Judge found that § 1985(3) effectively adds a conspiracy component to § 1982, and thus, because the allegations with respect to § 1982 were sufficient, they were also sufficient under § 1985(3). (*Id*.) The moving defendants object to this recommendation on the same grounds raised with respect to plaintiffs' § 1982 claims. (ECF No. 33 at 9.)

The Magistrate Judge, next, recommended that supplemental jurisdiction should be exercised over plaintiffs' State law claims because plaintiffs' federal claims remained. (ECF No. 31 at 13.) Defendants do not raise any objection to this recommendation. (*See* ECF No. 33 at 1-2.) In any event, because the Court agrees that plaintiffs' federal claims should not be dismissed, the Court ADOPTS the R&R to the extent it recommends exercising supplemental jurisdiction over plaintiffs' State law claims.

### III. Motion to Dismiss Standard

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014); *Mink v. Knox*, 613

4

F.3d 995, 1000 (10th Cir. 2010). In the complaint, the plaintiff must allege a "plausible" entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556, 127 S.Ct. 1955 (2007). "Asking for plausible grounds … does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [prohibited conduct]." *Id*. at 556. Conclusory allegations, however, are insufficient. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). A complaint warrants dismissal if it fails "*in toto* to render [plaintiff's] entitlement to relief plausible." *Id*. at 569 n.14.

## IV. Factual Background[1]

The Court assumes the truth of the following pertinent, non-conclusory allegations from the FAC.

Since December 5, 1997, defendants have owned one of the properties included within the B&B Condominium Complex in Ouray, Colorado ("the Complex"). (ECF No. 25 at ¶ 27.) Restrictive covenants, which imposed various rules for property owners and tenants in the Complex, were initially established by the B&B Condominium Complex Owners Association ("the Association") in 1997. (*Id*. at ¶ 29.) The restrictive covenants required all property owners and tenants to obtain approval from the Association before making any additions or alterations to the exterior of a property. (*Id*. at ¶ 30.) The Association has been dissolved since March 1, 2000, and never reestablished. (*Id*. at ¶ 33.) There is, therefore, no entity to approve a property owner's alterations or additions. (*Id*. at ¶ 34.)

Since March 1, 2001, defendants, as well as other property owners or tenants have made additions and alterations to the exterior of their property without obtaining approval from the

---

[1] The Court includes a factual background because the R&R does not.

Association.  (*Id*. at ¶ 36.)  These additions and alterations include multiple heat exhaust systems. (*Id*. at ¶ 37.)  None of the persons or entities that made these alterations or additions were African-American or associated with an African-American.  (*Id*. at ¶ 42.)

In April 2015, Mrs. Megna entered into a contract to purchase one of the two buildings within the Complex.  (*Id*. at ¶ 43.)  Mrs. Megna did so in order to relocate the Bistro.  (*Id*.)  During the process of obtaining the permits to open the Bistro, the Ouray building inspector informed Mr. and Mrs. Megna that there was only one place where a heating exhaust system could be installed legally. (*Id*. at ¶ 44.)  A heating exhaust system is a piece of equipment required by local ordinances for all restaurants, such as the Bistro, that use an open flame.  (*Id*.)  Plaintiffs installed the heating exhaust system on an exterior wall of their property in June 2015.  (*Id*. at ¶ 45.)  The Bistro began operating on June 20, 2015.  (*Id*. at ¶ 46.)

Around June 25, 2015, Mr. Megna introduced himself to Mrs. Ullemeyer, who immediately told Mr. Megna to get his "fucking chairs" off her "fucking building."  (*Id*. at ¶¶ 47-48.)  After Mr. Megna complied, Mrs. Megna came over to introduce herself.  (*Id*. at ¶ 49.)  Mrs. Ullemeyer informed Mr. and Mrs. Megna that they would need to remove their heating exhaust system because it was "ugly."  (*Id*. at ¶ 50.)  This was the first time Mrs. Ullemeyer had ever objected to any exterior addition or alteration within the Complex.  (*Id*. at ¶ 51.)

Around June 16, 2015,[2] Mr. Ullemeyer called Mr. Megna, referred to him as "boy," and threatened to bring legal action if the heating exhaust system was not moved.  (*Id*. at ¶ 52.) Mr. Meyer told Mr. Ullemeyer that he was not willing to move the heating exhaust system.  (*Id*. at

---

[2] The FAC states that certain events took place on June 16, 2015, even though the events on that day appear *after* the events on June 25, 2015.  (*See* ECF No. 25 at ¶¶ 47, 52.)  Whether "June 16" is a typographical error, the Court does not know.  For now, the Court keeps the dates as stated in the FAC, and also sets them out in the same order as the FAC.

6

¶ 53.) This was the first time Mr. Ullemeyer had ever objected to any exterior addition or alteration. (*Id*. at ¶ 55.) Days after Mr. Ullemeyer's call, Mrs. Ullemeyer sent one of her friends in to the Bistro to demand that the heating exhaust system be moved. (*Id*. at ¶ 57.)

From July to October 2015, Paul Sunderland ("Mr. Sunderland"), plaintiffs' attorney, worked with defendants' attorney to respond to defendants' demand that the heating exhaust system be moved. (*Id*. at ¶ 60.) Around July 1, 2015, for the first time, defendants communicated that the reason they wanted the heating exhaust system moved was because it violated the restrictive covenants and caused a nuisance. (*Id*. at ¶ 61.) To support these claims, defendants asserted that their tenant had complained. (*Id*. at ¶ 62.) Subsequently, Mr. Sunderland and Mr. Megna encountered defendants' tenant, and the tenant stated that he had never complained to defendants and he had no objection to the heating exhaust system. (*Id*. at ¶¶ 63-64.)

On January 4, 2016, Mr. and Mrs. Ullemeyer caused a lawsuit to be filed against plaintiffs ("defendants' State case"), alleging that the heating exhaust system was installed in violation of the restrictive covenants and it was a nuisance. (*Id*. at ¶¶ 66-67.) Defendants have never asserted these claims against any property owners or tenants within the Complex. (*Id*. at ¶ 68.) All proceedings in defendants' State case have been stayed pending the outcome of this action. (*Id*. at ¶ 74.)

As a result of defendants' conduct, plaintiffs have been required to expend "significant" monetary resources to defend against defendants' State case. (*Id*. at ¶ 77.) By incurring these costs, plaintiffs' resources have been diverted away from the Bistro, preventing plaintiffs from investing in the same. (*Id*. at ¶ 78.) Plaintiffs' monetary resources have been depleted to the extent that they have relied on credit cards to run the Bistro. (*Id*. at ¶ 79.) Mr. Megna has suffered from various medical complications, which have significantly interfered with Mr. Megna's ability to work as an

employee of the Bistro, including missing work, taking additional breaks, and preventing him from engaging in certain work-related tasks. (*Id*. at ¶¶ 82, 84.) Mrs. Megna's attention has been diverted away from the Bistro. (*Id*. at ¶ 86.)

## V. Discussion

### A. Plaintiffs' § 1982 Claims

Defendants object to the Magistrate Judge's recommendation with respect to plaintiffs' § 1982 claims on two grounds: (1) "use" of property is not protected under § 1982; and (2) a prima facie case under § 1982 requires more than what is alleged in the FAC. The Court addresses each argument in turn.

First, the Court agrees with the Magistrate Judge that a party's "use" of property is protected under § 1982. As defendants assert in their objections, the Magistrate Judge's recommendation in this regard relied, in part, upon the Supreme Court's decision in *City of Memphis v. Greene*, 451 U.S. 100, 101 S.Ct. 1584 (1981). (*See* ECF No. 33 at 4.) There is a very good reason for why the Magistrate Judge cited *Greene*, however. In that case, the Supreme Court explained that § 1982 has been "broadly construed…to protect not merely the enforceability of property interests acquired by black citizens but also their right to acquire and *use* property on an equal basis with white citizens." *Greene*, 451 U.S. at 120 (emphasis added). So it was clear that the Supreme Court's use of the word "use" was not a mistake, the Court then further explained that § 1982 might be violated if a street closing "severely restricted access to black homes, because blacks would then be hampered in the *use* of their property." *Id*. at 123 (emphasis added). It is, thus, clear enough to this Court that the protections provided by § 1982 encompass a party's use of property. The fact that the Tenth Circuit

8

Court of Appeals has not provided any further illumination of what "uses" constitute "use" for purposes of § 1982 does not mean that some forms of "use" are not covered by the statute.[3]

Second, the Court finds that plaintiffs have alleged a sufficient deprivation of their "use" of property to withstand dismissal. To an extent, the Court agrees with defendants that there is a lack of clarity as to the level of interference a party must suffer to his or her "use" of property for that interference to satisfy § 1982. That being said, the Supreme Court's decision in *Greene* provides sufficient clarity for purposes of this case. In *Greene*, the Supreme Court explained that a severe restriction on access to black homes would hamper the use of property. *Greene*, 451 U.S. at 123. From this, the Court believes that, at the very least, a party must allege that his or her use of property has been hampered by sufficiently severe conduct. *See also Delaunay v. Collins*, 97 F. App'x 229, 234 (10th Cir. 2004) (unpublished) (concluding that the plaintiffs had provided a basis for finding that the defendants "interfered with" their property rights).

What "hampered" and "interfered with" may mean in practical terms will usually be a fact specific determination. Certain of plaintiffs' allegations, though, fail to even allege that their use of property has actually been hampered by defendants' conduct. One of the principal "uses" that could have been hampered in this case is plaintiffs' use of the heating exhaust system to legally run the Bistro. Plaintiffs do not allege, however, that they have been hampered in using the heating exhaust

---

[3] Although an unpublished decision, as the Magistrate Judge explained, the Tenth Circuit's decision in *Delaunay v. Collins*, 97 F. App'x 229 (10th Cir. 2004), does provide some illumination of matters that are protected by § 1982. Notably, the Tenth Circuit held that, to establish a § 1982 claim, a party must show the denial of a right or benefit "connected with the ownership of property." *Id*. at 233. The Tenth Circuit then concluded that the plaintiffs in that case had done so in claiming that the defendants blocked their water supply and impeded their ranching operation. As far as this Court is concerned, the blocking of water and impeding of ranching operations are "uses" connected with the ownership of property. Put another way, they are certainly not evidently encompassed by any of the stated protections in § 1982. *See* 42 U.S.C. § 1982 (providing protection for inheriting, purchasing, leasing, selling, holding, and conveying property).

9

system. Instead, plaintiffs only allege that the system has been installed. (*See* ECF No. 25 at ¶ 45.) Plaintiffs also allege that their use of the property has been interfered with by defendants' campaign of harassment and intimidation. (ECF No. 25 at ¶¶ 93, 102.) Even if the Court was willing to assume that plaintiffs' factual allegations reflect a campaign of harassment and intimidation, though, plaintiffs fail to allege how any use of their property has been interfered with by this campaign. Rather, it appears that plaintiffs have withstood this campaign without change to their use of property. (*See id.* at ¶¶ 53, 58.)

There are, however, allegations that plausibly allege that plaintiffs' use of the property has been hampered, and thus, deserve to survive the motion to dismiss. Notably, plaintiffs allege that, in defendants selectively enforcing the restrictive covenants, plaintiffs' financial resources have been diverted from investing in the Bistro. Plaintiffs allege that their financial depletion has reached such an extent that they have been forced to run the Bistro on credit cards. Plaintiffs also allege that their ability to operate the Bistro has been impacted by defendants' conduct in that Mr. and Mrs. Megna have been forced to miss work. Although the Court finds these allegations on the "light" side of sufficiency, the question is whether plaintiffs' use of property has been hampered, not whether it has been hampered to a significant degree of magnitude.

The Court acknowledges that defendants' apparent argument—that cases finding an interference with the use of property have involved what appears to be more extreme conduct, such as a drive-by shooting or racist graffiti (*see* ECF No. 33 at 6-7)—has some persuasive force. That being said, none of the decisions to which defendants cite concluded that an undefined level of extreme conduct was necessary before a party's use of property could be hampered under § 1982. In addition, contrary to defendants' apparent assertion, the interference here is greater than that

described in *Greene*, where the Supreme Court concluded that the claimed injury involved requiring one public street rather than another to be used for certain trips within a city. *See Greene*, 451 U.S. at 124. Defendants characterize this injury as an "inconvenience." (ECF No. 33 at 5.) Here, as discussed *supra*, plaintiffs have been more than inconvenienced by defendants' alleged conduct, irrespective of whether the heating exhaust system is still in place. Moreover, in essence, plaintiffs allege that defendants have repeatedly sought to discriminatorily force plaintiffs to remove the heating exhaust system, culminating in defendants filing a discriminatory lawsuit to enforce the restrictive covenants. If true, and if defendants were successful, this would force plaintiffs to stop their business because the heating exhaust system is required by law. The Court, therefore, finds this alleged conduct to constitute a sufficient level of interference for present purposes.

Defendants argue otherwise. Defendants argue that, in seeking to enforce the restrictive covenants, they are simply pursuing the only legal recourse they have. (ECF No. 33 at 8.)[4] The Court will not weigh-in on the merits, or lack thereof, to defendants' State case, or whether that is the only legal recourse they have. At this juncture, it is enough that plaintiffs have alleged that defendants are pursuing that legal remedy with a discriminatory purpose and plaintiffs are the only property owners or tenants whose use of property has been interfered with in this way.[5]

---

[4] Defendants also argue that the heating exhaust system remains in place and plaintiffs continue to serve customers. (ECF No. 33 at 7.) However, as discussed *supra*, the Court did not rely on plaintiffs' use of the heating exhaust system in finding that their use of the property had been hampered. Moreover, to the extent this argument is relevant to defendants' main argument that the interference here is not sufficiently extreme, defendants cite to no case that would require a party to actually suffer the indignity of the consequences of another's discriminatory conduct before they can bring a claim under § 1982, especially here when plaintiffs allege that defendants are actively attempting to discriminatorily enforce the restrictive covenants and allege injury resulting from such enforcement.

[5] Defendants also argue that, in pursuing the only legal recourse open to them, they are seeking only "very reasonable" relief, as they merely want removal of the heating exhaust system or for it to be brought in compliance with the restrictive covenants. (ECF No. 33 at 8-9.) This argument ignores the allegations of the FAC that the heating exhaust system is required by law and it is impossible for plaintiffs

### B. Plaintiffs' § 1985(3) Claims

The sole argument that defendants make with respect to plaintiffs' § 1985(3) claims is that, because there is no actionable § 1982 claim, there can be no violation of § 1985(3). (ECF No. 33 at 9.) Because the Court has rejected defendants' arguments with respect to plaintiffs' § 1982 claims, though, the Court also rejects this argument.

## VI. Conclusion

For the reasons set forth herein, the Court:

(1) ADOPTS the R&R (ECF No. 31) as supplemented herein; and

(2) DENIES defendants' motion to dismiss (ECF No. 26).

**SO ORDERED.**

DATED this 22nd day of March, 2018.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

---

to bring the exhaust system in compliance with the restrictive covenants because there is no Association to approve the exhaust system.