**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 1:17-00308-RM-KMT

ERYN R. MEGNA,
ROBERT V. MEGNA, and
BACKSTREET BISTRO, LLC,

    Plaintiffs,

v.

LITTLE SWITZERLAND OF AMERICA CANDY FACTORY, INC.,
KRISTINE M. ULLEMEYER, and
HAYES ULLEMEYER,

    Defendants.

---

**ORDER**

---

This matter is before the Court on Defendants' motion for summary judgment on Plaintiffs' claims against them (ECF No. 91) and Plaintiffs' motion for summary judgment on Defendants' counterclaims (ECF No. 92). The motions have been fully briefed and are ripe for review. (ECF Nos. 101, 105, 109, 111.) For the reasons below, Defendants' motion is denied for the most part, and Plaintiffs' motion is denied in its entirety.

**I.    LEGAL STANDARDS**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Whether there is a genuine dispute as to a material fact depends on whether the evidence

presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotation omitted). A fact is "material" if it pertains to an element of a claim or defense, and a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

## II. BACKGROUND

The B&B Condominium Complex consists of two buildings, one owned by Defendant Little Switzerland of America Candy Factory, Inc. ("Little Switzerland") and one owned by Plaintiff Backstreet Bistro, LLC, and some common areas. The complex is subject to restrictive covenants that can be revoked only with the consent of all the owners. Defendants Kristine and Hayes Ullemeyer and the previous owners of Plaintiffs' building informally agreed to divide portions of the common areas into "designated areas" for each building. A fence was installed to enclose the Ullemeyer's designated area, and the previous owners of Plaintiffs' building built a deck in their designated area; however, no changes were made to the restrictive covenants. When Plaintiffs Eryn and Robert Megna purchased their building, the Ullemeyers' building was being leased to tenants.

This dispute arose after the Megnas had a heat exhaust blower installed on the outside of their building in a common area that is part of the Ullemeyers' designated area. The parties did

not discuss the installation beforehand. State and local regulations require a blower to operate a restaurant, and a building inspector told the Megnas that the blower could be installed only in its current location. The Ullemeyres allege that the exhaust from the blower "has a strong and unpleasant odor," that the blower "creates a continuous noise whenever in operation," and that the blower "presents an unsightly, offensive and obnoxious appearance which is clearly visible from" their building. (ECF No. 43 at ¶ 23.)

Interactions between the Megnas and Ullemeyers did not begin well. Mr. Megna, who is black, saw Ms. Ullemeyer, who is white, walking around the complex and introduced himself.[1] Plaintiffs allege that Ms. Ullemeyer "immediately responded by telling Mr. Megna, in a markedly hostile and aggressive tone, to get his 'fucking chairs' off of her 'fucking building.'" (ECF No. 25 at ¶ 48.) After Mr. Megna moved the offending chairs, Ms. Megna introduced herself to Ms. Ullemeyer. Ms. Ullemeyer responded to her by saying that she needed to move her blower because it was ugly. Mr. Megna and Mr. Ullemeyer also discussed the blower at some point.[2] Plaintiffs allege that during that discussion Mr. Ullemeyer used the word "boy" to address Mr. Megna and threatened legal action if the blower was not moved. Defendants contend that Mr. Ullemeyer never used the word "boy," and alternatively that even if he did, he did not use it to imply racial animus against Mr. Megna. On another occasion, Ms. Ullemeyer waited outside the Megnas' restaurant while her friend went in to complain about the blower. Mr. Megna told the friend she would have to speak with their lawyer.

---

[1] The other individual parties, Ms. Megna and Mr. Ullemeyer, are white.
[2] According to the complaint, this was a phone conversation initiated by Mr. Ullemeyer that occurred nine days before the Megnas introduced themselves to Ms. Ullemeyer. But there is also testimony in the record that Mr. Ullemeyer and Mr. Megnas had a face-to-face conversation.

3

In the months that followed, the parties' lawyers attempted without success to resolve the dispute. The Ullemeyers then filed a lawsuit in state court. The Ullemeyers alleged that the blower was installed in violation of the restrictive covenants and that it was causing a nuisance. After the state court denied the Megnas leave to add counterclaims under 42 U.S.C. §§ 1981, 1982, and 1983, Plaintiffs filed this lawsuit in federal court, and all proceedings in the state lawsuit were stayed.

Plaintiffs assert ten claims against Defendants, including violations of their rights under § 1982, violations of their rights under 42 U.S.C. § 1985(3), violation of the Common Interest Ownership Act ("CIOA"), conversion, private nuisance, and breach of covenants. (ECF No. 25.) Defendants assert four counterclaims for nuisance, violation of restrictive covenants, injunctive relief, and declaratory relief. (ECF No. 43.) Both sides seek summary judgment on the claims against them.

### III. ANALYSIS

#### A. Defendants' Motion for Summary Judgment

Defendants argue they are entitled to summary judgment on the claims against them because (1) there is insufficient evidence of racial discrimination to support a § 1982 claim and Plaintiffs cannot show that Defendants interfered with their use of property; (2) Plaintiffs cannot establish a conspiracy; (3) the CIOA does not apply to the restrictive covenants; (4) there is no genuine dispute supporting a conversion claim; and (5) there is no genuine dispute supporting claims for private nuisance and breach of covenants.

1.  Section 1982

Defendants' first two arguments address Plaintiffs' § 1982 claims. Section 1982 guarantees that all citizens of the United States shall have the right "to acquire and use property on an equal basis" and specifically protects "the right of blacks not to have property interests impaired because of their race." *City of Memphis v. Greene*, 451 U.S. 100, 120-22 (1981). Where there is no direct evidence of discrimination, courts analyze § 1982 claims under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (802) (1973). *Asbury v. Brougham*, 866 F.2d 1276, 1279 (10th Cir. 1989). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* If the plaintiff makes an adequate showing, the burden shifts to the defendant to articulate a legitimate reason for its action. *Id.* If the defendant makes an adequate showing, the burden shifts back to the plaintiff to show that the proffered reason is pretextual. *Id.*

Defendants deny that Mr. Ullemeyer ever used the word "boy," but they concede that a genuine issue exists on this point. Defendants contend that even if the word was used, there is insufficient evidence of any racial animus, and therefore Plaintiffs have not established a prima facie case of discrimination. The Supreme Court has addressed the use of the word "boy" in the context of an employment discrimination case, stating, "Although it is true the dispute word will not always be evidence of racial animus, it does not follow that the term, standing alone, is always benign." *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006). Here, Defendants point to Ms. Megna's testimony suggesting that Mr. Ullemeyer's use of "boy" could have been in reference to the relative ages of Mr. Megna (48) and Mr. Ullemeyer (82). But there is also testimony from Mr. Megna's supporting the inference that Mr. Ullemeyer was trying to establish

a hierarchy by making "racial comments." (ECF No. 105-4 at 19, p. 70.) Plaintiffs, not Defendants, are entitled to reasonable inferences in their favor at this stage of the case. Because there are disputed issues as to whether the word was said and, if it was said, what it meant, summary judgment is not appropriate.

Defendants also contend that Plaintiffs have not established a prima facie case of discrimination because there is no evidence that their lawsuit in state court is frivolous or motivated by Mr. Megna's race. For present purposes, there appear to be legitimate legal questions pertaining to the enforceability of the restrictive covenants, and the Court assumes that the case is not frivolous. But on the current record the Court is not persuaded that racial animus could not have played any part in the decision to file the state lawsuit. The fact that Defendants may have had disputes about the complex with other tenants and owners who were white does not establish that this lawsuit could not have been brought because of racial animus. Moreover, Plaintiffs have shown that previous tenants of the complex who were white installed blowers without complaint from Defendants. There are genuine issues as to whether these tenants were similarly situated to Plaintiffs based on the types of blowers that were installed and their locations. At this stage, however, Plaintiffs are entitled to the inference that Defendants' selectiveness in attempting to enforcement the restrictive covenants at issue here may have been motivated by racial animus. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (noting that the plaintiff's burden in establishing a prima facie case is slight and not onerous).

Defendants further contend that there is no evidence that their reasons for opposing the blower are pretextual. "A plaintiff shows pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendant's] proffered

6

legitimate reasons for its action that a reasonable trier of fact could rationally find them unworthy of credence and hence infer that the [defendant] did not act for the asserted nondiscriminatory reason." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (quotation omitted). Here, there is evidence that Defendants' reasons for opposing the blower changed over time and are unworthy of credence. For example, there is evidence that Defendants said that a tenant had complained about their blower, but Plaintiffs adduced evidence that the tenant was not bothered by it at all.[3] The Megnas have also stated that they perceived unexplained animosity from the Ullemeyers—such as in their initial interactions with Ms. Ullemeyer and in the tone used by Mr. Ullemeyer when addressing Mr. Megna—from which a jury could infer that the Ullemeyers filed their lawsuit for a discriminatory purpose. Of course, the record also supports the conclusion that Defendants may have legitimate reasons for opposing the blower. But the existence of a genuine issues of disputed fact precludes granting summary judgment at this stage of the case.

Defendants also argue that there is no evidence that they interfered with Plaintiffs' use of property because Plaintiffs were never prevented from using the blower. But Plaintiffs contend that Defendants' filing of a lawsuit in state court deprived them of the ability to use their property because participating in the litigation forced them to close the restaurant at times, to take time off from work, and to divert limited financial resources to attorney fees rather than improving their business. For present purposes, the Court finds Plaintiffs have adduced evidence showing they were "hampered in the use of their property," *Greene*, 451 U.S. at 123, and that

---

[3] In opposing Plaintiffs' motion for summary judgment, Defendants do not dispute that no one besides them complained about Plaintiffs' blower. (ECF No. 107-1 at ¶ 16.)

they experienced more than a mere inconvenience in the use of their property as a result of Defendants' efforts to have the blower removed. This suffices to survive summary judgment.

2. Section 1985(3)

Defendants argue that the lack of a genuine issue with respect to the § 1982 claims precludes Plaintiffs' conspiracy claims as well. To state a claim under § 1985(3), the plaintiff must establish: "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). The Court has already found there are genuine issues with respect to the § 1982 claims and that Plaintiffs have stated an injury with respect to those claims. Further, it is undisputed that Defendants acted in concert to bring their lawsuit. The Court concludes that these claims survive summary judgment.

3. CIOA

Defendants argue that the restrictive covenants are exempt from the CIOA, citing a provision of the restrictive covenants stating that the complex "is exempt from the provisions of the CIOA" and expressing the "intent not to be bound by the provisions of CIOA unless and to the extent that such election has been provided for herein." (ECF No. 92-11 at ¶ 28.4.) Plaintiffs fail to respond to this argument in a meaningful way. The fact that the restrictive covenants elsewhere express a desire to create a condominium common interest community is insufficient to preempt the plain meaning of the provision quoted above. Plaintiffs have not identified a genuine issue with respect to this claim, and Defendants are entitled to summary judgment.

4. Conversion

Defendants argue that there is no evidence to support Plaintiffs' claim for conversion. However, it is undisputed that two fences are installed in the common areas of the complex and that the restrictive covenants were never amended. Therefore, there are genuine issues as to whether Plaintiffs are being deprived of their right to access the common areas of the complex— regardless of whether those areas were accessible at the time they purchased their building. On the current record, summary judgment is not warranted.

5. Private Nuisance and Breach of Covenants

Defendants argue that Plaintiffs' claims for private nuisance and breach of covenants fail because Mr. Megna could not articulate the factual basis for them during his deposition. But the complaint states allegations supporting both claims. The private nuisance claim is based on Defendants' installation and operation of a swamp cooler. The breach of covenants claims is based on their installation of the swamp cooler, fences, and blowers without complying with the restrictive covenants. Defendants have not shown a lack of any genuine issue with respect to these claims. Therefore, summary judgment is not appropriate.

**B. Plaintiffs' Motion for Summary Judgment**

Plaintiffs contend they are entitled to summary judgment on Defendants' counterclaims, but the Court finds there are genuine issues of material fact precluding summary judgment. Plaintiffs contend that Defendants' nuisance claim must fail because the blower has not reasonably and substantially interfered with their property interests. And Plaintiffs argue that the restrict covenants contemplate a certain degree of certain degree of noise and odor resulting from commercial activity at the complex. However, these subjective criteria are matters of degree that

9

are not susceptible to resolution on summary judgment under the present circumstances. *See Cook v. Rockwell Int'l Corp.*, 273 F. Supp. 2d 1175, 1202 (D. Colo. 2003) ("Under Colorado law, whether the defendant has unreasonably and substantially interfered with the plaintiff's use and enjoyment of his property is a factual question to be decided by the trier of fact."). Plaintiffs have not shown the absence of any genuine issue with respect to Defendants' counterclaims; therefore, their motion is denied.

## IV. CONCLUSION

Accordingly, the Court GRANTS Defendants' motion for summary judgment (ECF No. 91) with respect to Plaintiffs' CIOA claim but DENIES it in all other respects. The Court DENIES Plaintiffs' motion for summary judgment (ECF No. 92) in its entirety.

DATED this 21st day of October, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge